# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

NATIONAL SPECIALTY
INSURANCE COMPANY,

           Plaintiff,

    v.

ADVANCED CARGO
TRANSPORTATION, INC., et al.,

           Defendants.

CIVIL ACTION NO. 3:14-CV-01417

(MEHALCHICK, M.J.)

## MEMORANDUM OPINION

This is a diversity action in which the Plaintiff, National Specialty Insurance Company ("National Specialty"), seeks declaratory judgment with respect to its coverage obligations under a liability policy it issued to Defendant Advanced Cargo Transportation, Inc. ("Advanced Cargo"). In essence, National Specialty seeks a declaration excusing it from any further obligation to defend or indemnify Advanced Cargo or other insureds under the policy with respect to a motor vehicle accident that occurred on October 10, 2011, on Interstate 80, westbound, at or near milepost 298, in which a truck driven by an Advanced Cargo employee or contractor, Defendant Washington Munoz-Arevalo,[1] was involved.

National Specialty claims that the limits of liability under that policy have been exhausted by settlement payments to various individual plaintiffs — the other motorists and their passengers involved in that motor vehicle accident — in underlying tort actions. Some or

---

[1] The complaint, the instant motion, and other papers filed by National Specialty in this case routinely refer to this defendant as "Munozarevalo," but all the underlying documentation appears to refer to him by name as "Munoz-Arevalo" or "Arevalo," mostly the former variant.

all of those same tort plaintiffs have brought suit against another company, Custom Polymers, Inc. ("Custom Polymers"), which had contracted with Advanced Cargo for the transportation of certain goods, asserting tort claims arising out of the very same incident. Custom Polymers, in turn, has initiated a third-party action against Advanced Cargo and Munoz-Arevalo, seeking contribution from them as joint tort-feasors. That third-party action has precipitated the instant coverage action by National Specialty, seeking a declaration that coverage is exhausted under the policy, and thus it is free from any further duty to defend or indemnify its insureds in connection with Custom Polymers' contribution claim.

All of the defendants in this coverage action, save one, have waived formal service and appeared to defend this action. The lone straggler is the driver, Washington Munoz-Arevalo. Two attempts to mail a summons and copy of the complaint to Munoz-Arevalo in New Jersey have been unsuccessful. Attempts to locate Munoz-Arevalo within New Jersey and personally serve him there have also been unsuccessful. National Specialty now moves the Court to authorize it to serve Munoz-Arevalo by publication.

## I. BACKGROUND

The complaint in this matter was filed on July 24, 2014. (Doc. 1).

On July 25, 2014, Plaintiff's counsel mailed the summons, a copy of the complaint, and a request for waiver of service to Munoz-Arevalo by certified mail, return receipt requested, at his last known address: 118 Chapel Street, Apartment 1, Newark, New Jersey 07105. (Doc. 29, at 2). That correspondence was ultimately returned to Plaintiff's counsel, marked "unclaimed." (Doc. 29, at 2).

Plaintiff's counsel engaged the services of a private investigator, who performed a background check on Munoz-Arevalo and identified "several possible residences." (Doc. 25-1,

at 2). On August 16, 2014, the private investigator conducted early morning "cold calls" on two Newark addresses: 241 Oliver Street, Apartment 5, Newark, New Jersey; and 118 Chapel Street, Newark, New Jersey. (Doc. 25-1, at 2). The investigator rang the doorbell at the Chapel Street house several times, but there was no answer. The investigator spoke with a next-door neighbor, who advised that a man named "Luis" resided there. The investigator left a note on the door. (Doc. 25-1, at 2; *see also* Doc. 29-2, at 1).

The investigator knocked several times on the door at the Oliver Street apartment, but there was no answer. The investigator canvassed the area and spoke with a woman who advised that Munoz-Arevalo had moved away "several years ago." The woman suggested that the investigator visit 281 Adams Street, Apartment 9, recalling that relatives of Munoz-Arevalo might live there. The investigator visited the Adams Street apartment, where no one answered the door, and he or she left a note on the door. (Doc. 25-1, at 2; *see also* Doc. 29-2, at 1–2).

Significantly, the investigator's August 19, 2014, report further noted that: "Our background address search also reveals a Florida address for Mr. Munoz-Arevalo. Please advise us as to how we should proceed." (Doc. 25-1, at 2).

On September 13, 2014, the investigator "revisited" *275* Adams Street, Apartment 9.[2] The investigator knocked on the door, but no one answered. The investigator spoke with several neighbors, none of whom were familiar with Munoz-Arevalo. The investigator left a note on the door. (Doc. 25-2, at 2; *see also* Doc. 29-2, at 2). On September 19, 2014, the

---

[2] It is unclear from the materials in the record whether one of the two reports by the private investigator contains a typo, or whether the investigator mistakenly visited two different apartment buildings located on the same block.

investigator "returned to the residence"[3] and spoke with a woman, who advised the investigator that Munoz-Arevalo "was neither a resident nor related to her." The woman requested that the investigator stop visiting the residence and closed the door. (Doc. 25-2, at 2; *see also* Doc. 29-2, at 2).

On September 23, 2014, pursuant to information developed by Plaintiff's counsel, the investigator visited a residence at 170 Tappan Street, Kearny, New Jersey, where he or she personally served the summons and a copy of the complaint on a man named Nuno Moniz, whom the investigator believed at the time to be Munoz-Arevalo. The investigator later determined that Moniz was not in fact the individual named as a defendant in this lawsuit. (Doc. 25-2, at 2; Doc. 29-2, at 2).

On October 3, 2014, Plaintiff's counsel attempted for a second time to mail the summons and a copy of the complaint to Munoz-Arevalo by certified mail, return receipt requested, this time at the second Newark address identified by Plaintiff's private investigator: 281 Adams Street, Newark, New Jersey, 07105. (Doc. 29, at 3). That correspondence was ultimately returned to Plaintiff's counsel, marked "unclaimed." (Doc. 29, at 3).

On October 9, 2014, the investigator once again unsuccessfully attempted personal service on Munoz-Arevalo at the Chapel Street house where he was last known to reside. (Doc. 29-2, at 1).

At some point, not specified in its motion papers, counsel for National Specialty contacted defense counsel who had appeared in one of the underlying tort cases on behalf of Munoz-Arevalo, as well as his erstwhile employer, Advanced Cargo. (Doc. 29, at 4–5). That

---

[3] Presumably at 275 Adams Street.

attorney himself had been unable to contact Munoz-Arevalo, and he had no information to offer with respect to Munoz-Arevalo's current location. (Doc. 29, at 5).

On October 30, 2014, National Specialty filed the instant motion for an order permitting it to serve Munoz-Arevalo by publication of a notice in *The Star Ledger*, a Newark, New Jersey, newspaper. (Doc. 29). The motion is unopposed by the other parties who have appeared in this action.

## II.   ANALYSIS

Under Rule 4(e) of the Federal Rules of Civil Procedure, service of a summons and complaint upon an individual within a judicial district of the United States may be effected by:

(A) delivering a copy of the summons and of the complaint to the individual personally;

(B) leaving a copy of each at the individual dwelling or usual place of abode with someone of suitable age and discretion who resides there; or

(C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e)(2).

Alternatively, service may be effected by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1).

In this case, National Specialty has attempted and failed to effect personal or substitute service upon Munoz-Arevalo pursuant to Rule 4(e)(2). Despite efforts to locate Munoz-Arevalo and serve him at several possible locations in New Jersey where he might have resided, National Specialty has been unable to locate him. As a result, National Specialty has requested an order by this Court authorizing service by publication in a Newark-area newspaper, pursuant to New Jersey Court Rule 4:4-5.

Just as under the federal rules, *see* Fed. R. Civ. P. 4(e)(2), under New Jersey law, personal service is the primary method to serve an individual located within the state. *See* N.J.R. 4:4-4(a) (*in personam* jurisdiction); N.J.R. 4:4-5(a) (*in rem* or *quasi in rem* jurisdiction); *Guardian Life Ins. Co. of Am. v. Crystal Clear Indus.*, No. 11-3062, 2012 WL 1884003, at *4 (D.N.J. May 22, 2012). If personal service within the state cannot be effected, substitute or constructive service is permitted under the New Jersey rules. *See* N.J.R. 4:4-4(b); N.J.R. 4:4-5; *Guardian Life*, 2012 WL 1884003, at *4. For *in personam* jurisdiction, the New Jersey rules authorize alternative forms of service, including personal service outside the state pursuant to the rules of the jurisdiction in which service is made, substitute service by mail, or "[i]f service cannot be made by any of the modes provided by this rule, . . . by court order, consistent with due process of law." N.J.R. 4:4-4(b); *Guardian Life*, 2012 WL 1884003, at *4. For *in rem* and *quasi in rem* jurisdiction, the New Jersey rules authorize alternative forms of service, including personal service outside the state pursuant to the rules of the jurisdiction in which service is made, substitute service by mail, or constructive service by publication. *See* N.J.R. 4:4-5(a); *Guardian Life*, 2012 WL 1884003, at *4. Regardless of the type of action, substitute or constructive service requires the submission of an affidavit or declaration demonstrating due diligence by the plaintiff in attempting first to locate and serve the defendant personally within the state. *See* N.J.R. 4:4-4(b)(1); N.J.R. 4:4-5(b); *Guardian Life*, 2012 WL 1884003, at *4.

National Specialty has expressly invoked the authority of New Jersey Court Rule 4:4-5(a)(3) in its request for this Court's authorization to serve Washington Munoz-Arevalo by publication. But, by its terms, Rule 4:4-5(a)(3) applies only to *in rem* and *quasi in rem* actions. *See* N.J.R. 4:4-5(a) (concerning "actions affecting specific property, . . . or any *res* within the jurisdiction of the court, or in matrimonial actions"). This action does not appear to "seek to

affect the rights of particular persons in specific property." *See Ins. Co. of N. Am. v. Allied Crude Vegetable Oil Ref. Corp.*, 215 A.2d 579, 586 (N.J. Super. Ct. Ch. Div. 1965). Indeed, "there is no dispute as to the ownership of the policy or any claims to the policy as a specific piece of property." *Allied*, 215 A.2d at 587. Rather than seeking to resolve a dispute as to title to the policy or its proceeds, National Specialty seeks a declaration that it has fully satisfied its contractual obligations to defend and indemnify its insureds, having paid out the policy's entire limits of liability with respect to the accident at issue in the underlying tort litigation. As such, this action is clearly brought *in personam*, rather than *in rem* or *quasi in rem*, and New Jersey Court Rule 4:4-5(a)(3) is inapplicable. *See generally Allied*, 215 A.2d at 584–87.

Service by publication is nevertheless permitted in *in personam* actions under New Jersey Court Rule 4:4-4(b)(3). *See Kopic v. Magriplis Corp.*, No. A-0212-05T1, 2006 WL 3903975, at *2 (N.J. Super. Ct. App. Div. Dec. 29, 2006). That rule provides that "[i]f service cannot be made by any of the modes provided by this rule, any defendant may be served as provided by court order, consistent with due process of law." N.J.R. 4:4-4(b)(3). A mode of service ordered by a court is "consistent with due process of law" if it provides "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *O'Connor v. Altus*, 335 A.2d 545, 556 (N.J. 1975) (quoting *Mullane*); *Kopic*, 2006 WL 3903975, at *2 (quoting *O'Connor*).

Concerning constructive service by publication in particular, this Court is mindful that "[s]ervice by publication is hardly favored and is the method of service that is least likely to give notice." *M&D Assocs. v. Mandara*, 841 A.2d 441, 448 (N.J. Super. Ct. App. Div. 2004). As the Supreme Court of the United States has observed:

> Chance alone brings to the attention of even a local resident an advertisement in small type inserted in the back pages of a newspaper, and if he makes his home outside the area of the newspaper's normal circulation the odds that the information will never reach him are large indeed.

*Mullane*, 339 U.S. at 315.

Based on the record before the Court, National Specialty appears to have conducted a diligent inquiry with respect to locations *within New Jersey* where Munoz-Arevalo might be found. But its private investigator also identified an address for Munoz-Arevalo in Florida. There is nothing in the record to demonstrate any attempt to serve Munoz-Arevalo in Florida, to determine whether Munoz-Arevalo still resides at the Florida address identified by the private investigator, or to determine whether the Floridian identified by the private investigator is indeed the same person as the named defendant in this action. As a result, the Court cannot conclude that National Specialty has made the requisite showing under New Jersey Rule 4:4-4(b)(3) that service cannot be made by any of the other modes of service provided by Rule 4:4-4, inasmuch as it permits substituted service by mail or personal service in Florida under that state's rules for service of process. *See* N.J.R. 4:4-4(b)(1). Moreover, knowing that Munoz-Arevalo may indeed reside in Florida rather than New Jersey, the Court cannot conclude that publication in *The Star Ledger*, the normal circulation of which is limited to several northern New Jersey counties, constitutes notice reasonably calculated to apprise Munoz-Arevalo of the pendency of this action. *See Mullane*, 339 U.S. at 314–15.

The Court notes that National Specialty is also permitted to invoke the procedures for service of process provided by Pennsylvania law. *See* Fed. R. Civ. P. 4(e)(1). Pennsylvania law provides similar vehicles for personal service outside the state, substituted service by mail, and constructive service by publication. *See* Pa. R. Civ. P. 404(1) (permitting personal service outside Pennsylvania pursuant to Pa. R. Civ. P. 402(a)); Pa. R. Civ. P. 404(3) (permitting

personal service outside Pennsylvania pursuant to the rules of the jurisdiction in which service is made); Pa. R. Civ. P. 404(2) (permitting substituted service outside Pennsylvania by mail pursuant to Pa. R. Civ. P. 403); Pa. R. Civ. P. 430 (permitting service by publication by special order if service cannot be made under other rules). Resort to Pennsylvania state procedures for service of process, however, would obtain the same result. *See Countrywide Home Loans, Inc. v. Stringer*, No. 3:07-CV-2072, 2008 WL 3853239, at *2–*3 (M.D. Pa. Aug. 15, 2008) ("Service by special order is an extraordinary measure that is appropriate only after all other methods of service available under the rules have been exhausted."); *Long v. Polidori*, No. 03-CV-1439, 2003 WL 21278868, at *1 (E.D. Pa. May 29, 2003) (publication in newspapers serving area of defendant's last known Pennsylvania address not reasonably calculated to provide required notice where defendant's last known address was in Louisiana and no evidence indicated that defendant had returned to Pennsylvania); *Clayman v. Jung*, 173 F.R.D. 138, 142 (E.D. Pa. 1997) (publication in newspaper serving area of defendant's last known residential address was not reasonably calculated to give requisite notice of action when information of record indicatd that defendant had moved and nothing suggested that he remained in the area).

## III.   CONCLUSION

For the foregoing reasons, National Specialty's motion authorizing service upon Washington Munoz-Arevalo by publication (Doc. 29) will be **DENIED** without prejudice.

An appropriate Order follows.


Dated: **November 19, 2014**                              *s/ Karoline Mehalchick*
                                                            **KAROLINE MEHALCHICK**
                                                            **United States Magistrate Judge**