## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

NATIONAL SPECIALTY INSURANCE
COMPANY,

             Plaintiff,

    v.

ADVANCED CARGO
TRANSPORTATION, INC., et al.,

             Defendants.

CIVIL ACTION NO. 3:14-CV-001417

(MEHALCHICK, M.J.)

### MEMORANDUM OPINION

This is a declaratory judgment action arising out of a 2011 motor vehicle accident. Presently before the Court is a motion for summary judgment filed by Plaintiff National Specialty Insurance Company ("National Specialty"). (Doc. 50). The motion has been fully briefed, and oral argument on the motion was held on May 18, 2015. There are no material issues of fact in dispute in this case. For the reasons that follow, the motion (Doc. 50) will be granted.

### I.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff National Specialty instituted this lawsuit against Defendants Advanced Cargo Transportation, Inc. ("Advanced Cargo"), Washington Munozarevalo, Custom Polymers, Inc. ("Custom Polymers"), Alec Sewatsky, Ryan Barrett, Lindsay Barrett, Caroline Mullally, and Grace Sato on July 24, 2014, seeking a declaration of its rights, obligations, and liabilities with respect to an insurance contract it had with Advanced Cargo.

The undisputed facts are as follows. On October 10, 2011, a motor vehicle accident occurred on Interstate 80 in Luzerne County involving a tractor trailer owned by Advanced

Cargo and operated by Washington Munozarevalo. (Doc. 51, at ¶ 1-2; Doc. 54-3, at ¶ 1-2). The tractor trailer was transporting goods on behalf of Custom Polymers in accordance with a shipping agreement between Custom Polymers and Advanced Cargo. (Doc. 51, at ¶ 4; Doc. 54-3, at ¶ 5). At the time of the accident, National Specialty insured Advanced Cargo and Washington Munozarevalo pursuant to a policy that provided for $1 million in liability coverage. (Doc. 51, at ¶ 5-6; Doc. 54-2, at ¶ 5-6). Alec Sewatsky, Ryan Barrett, Lindsay Barrett, Caroline Mullally, and Grace Soto—along with two other individuals who are not parties to this action—each made claims against Advanced Cargo, Washington Munozarevalo, and insurer National Specialty as a result of the accident. (Doc. 51, at ¶ 7-14; Doc. 54-2, at ¶ 7-14). National Specialty settled each of these claims, and in the process paid out the $1 million in liability coverage provided in its contract with Advanced Cargo. (Doc. 51, at ¶ 15; Doc. 54-3, at ¶ 4).

In 2013, after the settlement of each of the above-mentioned claims, Defendants Alec Sewatsky, Ryan Barrett, Lindsay Barrett, Caroline Mullally, and Grace Soto brought a suit against Defendant Custom Polymers in the United States District Court for the Middle District of Pennsylvania (No. 3:13-CV-02450), alleging negligent entrustment and negligence arising from the shipping agreement between Custom Polymers and Advanced Cargo (the "Custom Polymers action"). (Doc. 51, at ¶ 16-17; Doc. 54-3, at ¶ 5). In turn, Custom Polymers filed a third party action against Advanced Cargo and Washington Munozarevalo asserting claims of sole liability as well as contribution and indemnity. (Doc. 51, at ¶ 18; Doc. 54-3, at ¶ 6). National Specialty provided an initial legal defense for Advanced Cargo and Munozarevalo after they were joined as parties in the Custom Polymers action, but National Specialty has

since accepted assignment of the defense to Matthew Slocum of The Slocum Firm P.C. (Doc. 51, at ¶ 19; Doc. 54-3, at ¶ 12).

On July 24, 2014, National Specialty filed the action now before this Court seeking a declaration as to its further rights, obligations, and liabilities with respect to Advanced Cargo and Munozarevalo in light of the ongoing Custom Polymers action. (Doc. 1). Advanced Cargo filed an answer on September 24, 2014.[1] (Doc. 21). Once all parties were served process, National Specialty filed the instant motion for summary judgment on February 19, 2015 (Doc. 50), along with a brief in support of its motion (Doc. 52), and a statement of facts (Doc. 51). On March 5, 2015, Advanced Cargo filed a brief in opposition to the motion for summary judgment (Doc. 54), and its own statement of facts (Doc. 54-3). National Specialty filed a reply brief on March 10, 2015 (Doc. 55), to which Advanced Cargo responded with a sur reply the following day (Doc. 56). At oral argument on May 18, 2015, the parties agreed that no material issues of fact remained in dispute. This case, having been fully briefed and presented at oral argument, is now ripe for disposition.

## II.   JURISDICTION

National Specialty seeks a declaratory judgment identifying its rights, obligations, and liabilities with respect to Defendants Advanced Cargo and Munozarevalo. The Declaratory Judgment Act provides, in relevant part:

---

[1] With the exception of Defendant Munozarevalo, all other parties named in the complaint waived service and retained counsel to appear on their behalf but otherwise had limited involvement in contesting this action. Munozarevalo could not be located despite efforts to effectuate service of process by mail and personally, so he was ultimately served by publication in *The Star-Ledger* of Newark, New Jersey, in accordance with the New Jersey Rules of Court and Rule 4(e) of the Federal Rules of Civil Procedure. (Doc. 45).

> (a) In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a). The Declaratory Judgment Act does not provide a stand-alone basis for federal jurisdiction; a trial court may only exercise jurisdiction over a declaratory judgment action where a separate basis for jurisdiction already exists. *See Clevenger v. First Option Health Plan of New Jersey*, 208 F. Supp. 2d 463, 468 (D.N.J. 2002). Here, this Court has diversity of citizenship jurisdiction over the parties pursuant to 28 U.S.C. § 1332.

Even where subject matter jurisdiction exists, however, the United States Court of Appeals for the Third Circuit has instructed its lower courts to use discretion in determining whether to exercise jurisdiction over a declaratory judgment action. *State Auto Ins. Cos. v. Summy*, 234 F.3d 131, 133 (3d Cir. 2000). "The question in each case is whether the facts alleged show that there is a substantial controversy, between parties having adverse legal interests, 'of sufficient immediacy and reality to justify judicial resolution.'" *Peachlum v. City of York, Pa.*, 333 F.3d 429, 434 (3d Cir. 2003) (quoting *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). This Court concludes that National Specialty's complaint states a real and concrete controversy that is ripe for a determination of legal obligations.[2] "Declaratory suits to determine the scope of insurance coverage have often been brought independently of the underlying claims" even if the insured's liability in the underlying claim is yet to be established.

---

[2] The court must address potential justiciability issues *sua sponte* when considering a declaratory judgment action. *Peachlum*, 333 F.3d at 433. This is not a moot controversy at this juncture. (Doc. 54, at 8-9).

*ACandS, Inc. v. Aetna Cas. & Sur. Co.*, 666 F.2d 819, 823 (3d Cir. 1981). "Moreover, that the adjudication [of the declaratory suit] will not result in any immediate payment of damages by the litigants here is not determinative." *ACandS*, 666 F.2d at 823 (citations omitted). Although National Specialty is not currently providing a defense for Advanced Cargo, a determination of the legal obligations sought in this motion would impact how all parties proceed in the Custom Polymers action. *See ACandS, Inc.*, 666 F.2d at 823; *Worster-Sims v. Tropicana Entm't, Inc.*, No. CIV. 13-1981 RBK/AMD, 2014 WL 4978588, at *3-4 (D.N.J. Oct. 6, 2014). The Court therefore finds that National Specialty presents a "case or controversy" ripe for review by this Court.

## III.   SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000). In making this

determination, "a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994). The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## IV. DISCUSSION

### A. INTERPRETATION OF INSURANCE CONTRACTS UNDER PENNSYLVANIA LAW

The Court must review the express language of the insurance coverage agreement between National Specialty and Advanced Cargo to determine whether—as National Specialty claims—the terms of the agreement permit it to deny coverage and a legal defense to Advanced Cargo in the Custom Polymers action. *Madison Const. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999). Under Pennsylvania law, "the interpretation of the scope of coverage of an insurance contract is a question of law properly decided by the court." *Med. Protective Co. v. Watkins*, 198 F.3d 100, 103 (3d Cir. 1999). The Supreme Court of Pennsylvania has instructed:

> Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement. Where, however, the language of the contract is clear and unambiguous, a court is required to give effect to that language.

*Standard Venetian Blind Co. v. Am. Empire Ins. Co.*, 469 A.2d 563, 566 (1983) (citations omitted).

Contract language is ambiguous if it lends itself to multiple reasonable interpretations when applied to a particular set of facts. *Hutchison v. Sunbeam Coal Co.,* 519 A.2d 385, 390 (Pa. 1986).

A court may not, however, stretch the meaning of the plain contractual language to find an ambiguity where none exists. *Madison Const. Co.*, 735 A.2d at 106.

The insurance contract provides the following with regard to **Section II–Liability Coverage**:

### A. Coverage
We have a right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense." However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.
 . . .
### C. Limit of Insurance
Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined, resulting from any one "accident" is the Limit of Insurance of Liability Coverage shown in the Declarations.
All "bodily injury," "property damage" and "covered pollution cost or expense" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

(Doc. 1-1, at 15, 18).

National Specialty contends that the plain language of this Section is unambiguous; it exhausted the Liability Coverage Limit of Insurance and thus no longer has a duty to defend Advanced Cargo. (Doc. 50, at ¶ 37-38). In contrast, Advanced Cargo argues that in addition to National Specialty's contention that the duty to defend ends once the policy limit is reached for a given accident, the Section can also reasonably be read to support the assertion that the duty to defend still applies because the Custom Polymers action is a "suit," regardless of whether it stems from the same "accident." (Doc. 54-1, at 7-8).

### 1.  The Duty to Defend

The argument raised by Advanced Cargo relies on the distinction under Pennsylvania law between an insurer's duty to defend and duty to indemnify. "Although the duty to defend is separate from and broader than the duty to indemnify, both duties flow from a determination that the complaint triggers coverage." *Gen. Acc. Ins. Co. of Am. v. Allen*, 692 A.2d 1089, 1095 (Pa. 1997). "Consequently, there may be an obligation to defend although no obligation to indemnify" because the Pennsylvania Supreme Court has held "that the obligation to defend arises whenever the complaint filed by the injured party may *potentially* come within the coverage of the policy." *Gedeon v. State Farm Mut. Auto. Ins. Co.*, 188 A.2d 320, 322 (Pa. 1963) (emphasis in original).

If an injured party's complaint does not potentially come within the coverage of the policy, however, then the duty to defend is not activated. *See Erie Ins. Exch. v. Claypoole*, 673 A.2d 348, 355-56 (Pa. Super. Ct. 1996) ("[O]nly allegations contained within the underlying complaint pertaining to injuries which are either actually or potentially within the scope of the insurance policy obligate the insurer to defend the insured."). In *Wilson v. Maryland Casualty Co.*, 105 A.2d 304, 307 (Pa. 1954), the Pennsylvania Supreme Court established that an insurance company "is not required to defend if it would not be bound to indemnify the insured even though the claim against [the insured] should prevail." The Third Circuit later clarified that the rule established in *Wilson* also applies to limitations on the total amount of policy coverage. *ACandS, Inc. v. Aetna Cas. & Sur. Co.*, 764 F.2d 968, 975 (3d Cir. 1985) ("If, at the outset of a particular action, it is properly established that the insurer cannot possibly be liable for

indemnification because policy limits have been exhausted, then the policy language does not impose a duty to defend that action under Pennsylvania law.").[3]

As with other principles of contract, however, Pennsylvania courts' interpretation of the link between the duty to defend and the duty to indemnify may be overcome by language to the contrary in the contract itself. *See Commercial Union Ins. Co. v. Pittsburgh Corning Corp.*, 789 F.2d 214, 218 n. 5 (3d Cir. 1986) ("We stress that the linkage between the duty to defend and the duty to indemnify is a creature of contract, not a general principle of law. Thus, some of the cases relied on by Pittsburgh Corning are simply inapplicable because the language of the policies in those cases varied from the language of the policies here."). Accordingly, our inquiry into the terms of the Advanced Cargo insurance policy must be twofold: (1) whether National Specialty can possibly be liable for indemnification in light of its policy limit; and, if not (2) whether the parties agreed to sever the traditional link between the duty to defend and the duty

_____

[3] The Third Circuit has also articulated a compelling policy reason for linking the duty to defend to the duty to indemnify:

> Interpreting the policy in this manner also leads to the most reasonable allocation of defense responsibilities. A carrier that is obligated to pay for both defense and indemnification has an incentive to minimize its total liability, and thus the total costs arising from a claim. By contrast, severing the duty to defend from the duty to indemnify creates a serious conflict of interest, with one carrier wishing to minimize litigation costs and the other intent on litigating even marginally contestable claims. This conflict is acute regardless of which carrier has actual control of the defense; it is likely to be especially severe, however, where the insurer with the duty to defend has the right to negotiate and settle claims, as PC's counsel appeared to concede at oral argument was the case here. We find it unlikely that the parties contemplated such a result.

*Commercial Union, 789 F.2d at 219*.

to indemnify, and thus require National Specialty to provide a legal defense in cases where it could not possibly be bound to indemnify.

### B. APPLICATION TO THE ADVANCED CARGO CONTRACT

The Court must first determine whether National Specialty cannot possibly be liable to further indemnify Advanced Cargo because it has already exhausted its policy limit. The insurance contract establishes a $1 million limit of insurance of liability coverage. (Doc. 1-1, at 8). The parties agree that National Specialty has already paid a total of $1 million to settle claims brought by numerous individuals affected by the accident. (Doc. 51, at ¶ 15; Doc. 54-3, at ¶ 4). In **Section II–Liability Coverage** of the insurance contract, Subsection **C. Limit of Insurance** provides:

> Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined, resulting from any one "accident" is the Limit of Insurance of Liability Coverage shown in the Declarations.

> (Doc. 1-1, at 18).

An "accident" is defined in **Section VI–Definitions** to include "continuous or repeated exposure to the same conditions resulting in 'bodily injury' or 'property damage.'" (Doc. 1-1, at 24). Although the term "claims" is not defined in the insurance contract, the parties agree that the $1 million National Specialty already paid out was to settle claims for damages suffered as a result of the "accident" involving the tractor trailer operated by Munozarevalo. (Doc. 51, at ¶ 7-14; Doc. 54-3, at ¶ 4). As a result of those payments, the Limit of Insurance of Liability Coverage was exhausted for this particular "accident." The parties also agree that the Custom Polymers action is a claim stemming from that same tractor trailer "accident." (Doc. 51, at ¶ 18; Doc. 54-3, at ¶ 5-6). Accordingly, in order to give the language of **Section II–Liability**

**Coverage**, Subsection **C. Limit of Insurance** its plain meaning, the Court finds that National Specialty cannot possibly be liable to provide indemnification of Advanced Cargo in the Custom Polymers action because National Specialty has already paid the Limit of Insurance of Liability Coverage for this particular "accident."

Having found that National Specialty cannot possibly be liable for indemnification, the Court must next determine whether the insurance contract requires National Specialty to provide a legal defense even in cases where it is clearly not bound to indemnify. In **Section II–Liability Coverage**, Subsection **A. Coverage**, National Specialty states: "We have a right and duty to defend any 'insured' against a 'suit' asking for such damages or a 'covered pollution cost or expense.'" (Doc. 1-1, at 15). In that same paragraph, however, National Specialty clarifies: "Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements." (Doc. 1-1, at 15). Because the Liability Coverage Limit of Insurance had been exhausted by the payment of settlements for this particular "accident," a reading of the plain language of the contract indicates that National Specialty's duty to defend has ended.

Advanced Cargo argues that the contract is ambiguous as to the duty to defend because National Specialty assumes a duty to defend against a "suit," and the policy language stating that the duty to defend ends upon the exhaustion of the Liability Coverage Limit of Insurance does not specify that it pertains to new "suits." (Doc. 54, at 8). The Court finds this argument unpersuasive. "A contractual provision is not ambiguous if 'the contractual language is subject to only one reasonable interpretation.'" *Woodbury v. Am. Home Prods. Corp.*, 285 F. Supp. 2d 544, 547-48 (D.N.J. 2003) (quoting *Sanford Inv. Co., Inc. v. Ahlstrom Machinery Holdings, Inc.*, 198 F.3d 415, 420–21 (3d Cir.1999)). The Court must construe the language of the insurance

contract "in a manner that gives meaning to each provision." *United States v. Floyd*, 428 F.3d 513, 516 (3d Cir. 2005). The only way to give meaning to the provision stating that National Specialty's "duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted" is by finding that this disclaimer applies to new suits. (Doc. 1-1, at 15). If exhausting the Liability Coverage Limit of Insurance does not end National Specialty's duty to defend new suits, then it is impossible to see what this disclaimer could apply to. Accordingly, the Court finds that the contractual language in Subsection **A. Coverage** is subject to only one reasonable interpretation—that the exhaustion of policy limits ends National Specialty's duty to defend new suits.

This Court's interpretation of the insurance contract as providing that the duty to defend ends upon the exhaustion of the policy limit is consistent with the findings of Pennsylvania state courts and other courts within the Third Circuit that were tasked with interpreting similar language. The United States District Court for the Eastern District of Pennsylvania evaluated an insurance contract featuring identical language for Subsection **A. Coverage** and Subsection **C. Limit of Insurance** to the language in the dispute at hand, and determined "the policy language unambiguously stated that the insurer's duty to settle or defend ended when the limit of liability was exhausted." *NIA Learning Ctr., Inc. v. Empire Fire & Marine Ins. Cos.*, No. CIV.A. 05-5178, 2009 WL 3245424, at *7 (E.D. Pa. Oct. 1, 2009). Likewise, in *Maguire v. Ohio Casualty Insurance Co.*, a Superior Court of Pennsylvania panel evaluated a set of similar factual circumstances to the facts at hand, and held that an insurer's duty to defend terminated upon the exhaustion of policy limits. 602 A.2d 893, 894 (Pa. Super. Ct. 1992). The insurer had paid the full policy limit to an initial claimant after the crash, but the Superior Court held that the policy language made clear that the insurer had no duty to defend when the insured was joined

as an additional defendant to a second suit stemming from the same crash.[4] *Maguire*, 602 A.2d at 894.

## V.    CONCLUSION

For the foregoing reasons, the Court will **GRANT** Plaintiff's motion for summary judgment (Doc. 50), and enter declaratory judgment in favor of the Plaintiff National Specialty Insurance Company. Specifically, the Court finds that National Specialty is under no legal obligation to provide further legal defense or insurance coverage to Defendant Advanced Cargo Transportation, Inc. under the policy issued by National Specialty for the tractor trailer accident involving Washington Munozarevalo occurring on October 10, 2011, on Interstate 80 in Luzerne County, Pennsylvania.

An appropriate Order follows.

Dated: July 28, 2015                                      *s/ Karoline Mehalchick*

**KAROLINE MEHALCHICK**
**United States Magistrate Judge**

---

[4] The relevant policy language provided as follows:

We will pay damages for bodily injury or property damage for which any covered person becomes legally responsible because of an auto accident. We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted.

*Maguire*, 602 A.2d at 894.